1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MELVIN WISHUM, et al.,

        Plaintiffs,

    v.

EDMUND G. BROWN, et al.,

        Defendants.

Case No. 14-cv-01491-WHO

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 42

The plaintiffs bring an action under 42 U.S.C. § 1983 on behalf of Markise Wishum ("the decedent"), alleging that the defendants failed to provide the decedent with adequate medical care while he was incarcerated, ultimately leading to his death. The complaint was dismissed twice before being transferred to me. Now defendant Matthew Cate, the former Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), moves to dismiss the plaintiffs' first amended complaint ("FAC"), arguing that it fails to state a claim upon which relief can be granted against him.

This matter is appropriate for resolution without oral argument, and the hearing scheduled for April 1, 2015 is VACATED pursuant to Civil Local Rule 7-1(b). I agree with Cate that the FAC does not adequately plead a causal connection between his actions and the alleged violations of 42 U.S.C. § 1983, and GRANT the motion to dismiss. I will allow leave to amend one last time.

**BACKGROUND**

I accept all statements of fact set forth in the FAC as true. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012). The decedent was incarcerated in the Salinas Valley State Prison when he was diagnosed with Metastic Squamous Cell Carcinoma. FAC ¶¶ 3, 15. Between September 2009 and May 2010 the decedent was treated and placed into remission.

United States District Court
Northern District of California

1    *Id.* ¶ 3.  "The successful treatment of [the decedent's] cancer required that various test[s] and

2    procedures be followed once [he] was released into the Salinas Valley Prison."  *Id.*  However, this

3    treatment was not administered.  *Id.*

4          In May of 2010 the decedent had a CT scan that failed to detect a new tumor near his eye.

5    *Id.* ¶ 15.  Although the hospital required that the decedent have another CT scan two to three

6    months afterwards, he did not.  *Id.*  Around June of 2010, the decedent began complaining of

7    headaches, requested a medication change, and noticed a swelling over his left eye.  *Id.*  He did not

8    see a doctor until February 2, 2011, nearly eight months after the symptoms began and the follow-

9    up tests should have been administered.  *Id.*  On February 24, 2011, the decedent was admitted to

10   the hospital for possible chemotherapy.  *Id.*

11         The decedent, as well as the plaintiffs, "gave timely notice to each of the individual

12   [d]efendants that [the decedent] was being denied desperately needed medical care for the cancer

13   that he feared might return."  *Id.*  The decedent's "condition deteriorated as a result of the failure

14   to provide competent nursing and medical staff to fulfill assigned responsibilities[;] failure to

15   provide a safe environment; failure to provide competent mental health evaluators/physicians to

16   fulfill assigned responsibilities; [and] failure to maintain proper records to provide optimal health

17   care."  *Id.* ¶ 4.  The decedent died in August 2011.

18         Plaintiffs filed the FAC after the Court dismissed their complaint with prejudice against

19   state actors protected by the Eleventh Amendment and without prejudice against the individual

20   defendants, including Cate.  Order (1) at 6-7 (Dkt. No. 23).  Defendant Edmund Brown moved to

21   dismiss the FAC for failure to state a claim against him, which the Court granted.  Order (2) at 6

22   (Dkt. No. 37).  While defendant Cate's motion to dismiss the FAC was pending, this matter was

23   transferred to me.

24                                    **LEGAL STANDARD**

25         Federal Rule of Civil Procedure 12(b)(6) requires a district court to dismiss a complaint if

26   it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

27   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

28   face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

1    A claim is plausible on its face when the facts pleaded "allow[] the court to draw the

2    reasonable inference that the defendant is liable for the misconduct alleged," and present "more

3    than a sheer possibility" that the defendant acted unlawfully.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4    (2009) (internal citations and quotations omitted).  A plaintiff must allege facts sufficient to "raise

5    a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.  In resolving a Rule

6    12(b)(6) motion, the court accepts the plaintiff's allegations as true and draws all reasonable

7    inferences in its favor.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987).  However,

8    the court is not required to accept as true "allegations that are merely conclusory, unwarranted

9    deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049,

10   1055 (9th Cir.2008).

**DISCUSSION**

12   A prisoner bringing a claim under section 1983 for an Eighth Amendment violation must

13   establish (i) that a prison official deprived him of the "minimal civilized measure of life's

14   necessities," and (ii) that the official acted with deliberate indifference. *Toguchi v. Chung*, 391

15   F.3d 1051, 1057 (9th Cir. 2004) (internal citations and quotations omitted).  The plaintiffs must

16   demonstrate that Cate either acted with deliberate indifference or that his conduct was so reckless

17   that it was tantamount to a desire to inflict harm.  *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir.

18   2011).

19   Deliberate indifference may be based upon a "supervisor's knowledge of and acquiescence

20   in unconstitutional conduct by his or her subordinates." *Id.* at 1207.  A supervisor may be subject

21   to liability if (i) he was personally involved in the constitutional deprivation; or (ii) a sufficient

22   causal connection exists between the supervisor's wrongful conduct and the constitutional

23   violation.  *Id.*  In the latter case, the plaintiffs may establish a causal connection by showing that

24   the supervisor set in motion a series of wrongful acts by others, or that he "knowingly refus[ed] to

25   terminate a series of acts by others, which [he] knew or reasonably should have known would

26   cause others to inflict a constitutional injury."  *Id.* at 1207-08.

27   To establish that a supervisor was deliberately indifferent to the actions of his

28   subordinates, a plaintiff must "allege sufficient facts to plausibly establish the defendant's

United States District Court
Northern District of California

'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).  A party cannot adequately allege that a supervisor is liable for the actions of his subordinates by stating only that the supervisor was responsible for the actions of others and that he acquiesced in their actions. *Ramirez v. Cate*, No. 12-CV-00383-WHO (PR), 2014 WL 1092976, at *2 (N.D. Cal. Mar. 18, 2014); *Jones v. Shaltry*, No. C 13-2305 NC PR, 2013 WL 2646596, at *3 (N.D. Cal. June 12, 2013).

One can imagine that facts might exist to assert a plausible claim against someone for the decedent's death.  But the FAC alleges very few specific facts to support its allegations.  Instead, it is replete with generalized statements concerning the defendants' liability.  It states that the "[d]efendants knew the seriousness of [the decedent]'s condition and were aware of his medical needs." *Id.* ¶ 18.  Despite this knowledge, they "engaged in maliciously, willfully and oppressive [sic] conduct with the intent to harm [the decedent]," with "a conscious disregard of [the decedent]'s rights," and with the intent to injure him. *Id.*  Each of the defendants "had a duty to ensure that all possible steps were taken to protect [the decedent] from the objectively and sufficiently serious risk as described herein." *Id.* ¶ 15.  Due to their positions in the government and prison system, the defendants "were aware that the State of California would not be providing resources to adequately treat and keep decedent's cancer in remission." *Id.* ¶ 14.

These allegations do not include specific facts that support plausible claims.  Rather, they recite conclusory allegations relating to the defendants' states of mind.  The FAC states that the decedent requested and should have received medical care, but provides no specific instances of when the decedent requested medical care, to whom, and when it was denied.  It is difficult to determine from the face of the FAC what actions by prison officials led to the alleged constitutional deprivations or when they occurred.  In addition, the pleadings lack important information relating to the decedent's specific medical needs or the exact care that was denied to him.

Importantly for this motion, the FAC does not identify any particular wrongful act by Cate that led to the violation of the decedent's rights.  The above allegations do not mention Cate or indicate that he was personally involved in the violations.  As stated in the prior order, the

4

allegations that Cate is the former secretary of the CDCR, that he was responsible for the operations of the California state prisons, and that he was responsible for the health and welfare of the prison population are generalized statements that do not adequately state Cate's involvement in the alleged violations under *Iqbal*.  Order (2) at 4.

The FAC does allege that "CATE and/or his office was contacted repeatedly by Plaintiffs advising him that [the decedent] was in desperate need of medical care that had been prescribed and he was not receiving at Salinas Valley State Prison" and that Cate "[k]new of the substantial risk of serious harm to the [decedent]."  FAC ¶ 7.  The FAC does not allege that Cate received these communications, what their content was, or even when they occurred.  These allegations do not provide any basis to infer that Cate knowingly acquiesced in unconstitutional conduct by his subordinates.  Nor do they establish that he implemented a plan or policy that led to the violations.  *See Hydrick*, 669 F.3d at 942 ("there is no allegation of a *specific* policy implemented by the Defendants or a *specific* event or events instigated by the Defendants that led to these purportedly unconstitutional [actions]."

The FAC fails to properly state that Cate was personally involved in the purported violations of the decedent's Eighth Amendment rights, or that there was a causal connection between Cate's wrongful actions and the deprivation.  Therefore, it is insufficient to state a claim upon which relief can be granted and must be DISMISSED.

Judge Tigar's last order addressed only Governor Brown's motion to dismiss.  Order (2) at 6.  The plaintiffs have apparently decided not to serve the other named defendant, Anthony Hedgepeth, Warden of Salinas Valley State Prison, so a dismissal with prejudice of Cate would end the case.  *See* Dkt. No. 43 at 2.  Judge Tigar gave the plaintiffs sufficient direction in his two orders on what is necessary to allege a plausible claim, but the plaintiffs have not followed it.  Perhaps they cannot.  It is not obvious to this Court whether there are other potentially responsible parties, and the pleadings offer no information in that regard.  I will give the plaintiffs thirty days to amend the complaint.  If they cannot state a plausible claim in light of all the direction they have received, I would expect to dismiss this case with prejudice after another motion to dismiss.

1

**CONCLUSION**

2    For the above reasons, defendant Cate's motion to dismiss is GRANTED with leave to

3  amend.  The plaintiffs must file an amended complaint within thirty days.

4    **IT IS SO ORDERED**.

5  Dated: March 27, 2015

6    

7    WILLIAM H. ORRICK
    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California